T.C. Memo. 2000-229


UNITED STATES TAX COURT


RICHARD E. CRAMER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8605-99.                        Filed July 31, 2000.


Richard E. Cramer, pro se.

<u>Fred E. Green, Jr.</u>, for respondent.


MEMORANDUM OPINION


COUVILLION, <u>Special Trial Judge</u>: Respondent determined a
deficiency of $9,366 in Federal income tax and an accuracy-
related penalty of $437.20 under section 6662(a) with respect to
petitioner's 1996 tax year.[1]

The issues for decision are: (1) Whether petitioner's show

---

[1]      Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the year at issue.

horse activity was an activity not engaged in for profit under section 183, and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a).  If the Court holds that the show horse activity was an activity engaged in for profit, respondent alternatively claims that the expenses incurred in the activity have not been substantiated.[2]

Some of the facts were stipulated.  Those facts, with the annexed exhibits, are so found and are incorporated herewith.  At the time the petition was filed, petitioner's legal residence was Las Vegas, Nevada.[3]

Petitioner was employed full time during 1996 by Toyota West, a local automobile dealer at Las Vegas, Nevada.  Petitioner operated or managed a marketing program for Toyota West that involved the use of independent contractors who referred or

[2] In the notice of deficiency, respondent determined that petitioner realized gambling income of $7,052 in excess of the $10,373 gambling income reported on petitioner's 1996 Federal income tax return.  At trial, petitioner conceded the $7,052 in additional income but claimed additional losses from gambling for that amount as an itemized deduction.  Respondent conceded that claim at trial.

[3] Petitioner was married during 1996 and filed a joint Federal income tax return with his wife, Irene Cramer.  The notice of deficiency was issued jointly to petitioner and his wife; however, Mrs. Cramer did not petition this Court.  Counsel for respondent advised the Court at trial that the deficiency and the sec. 6662(a) penalty had been assessed against Mrs. Cramer, but an appropriate abatement would be made to the assessment against her to the extent that any issues in this case are decided in favor of petitioner.

solicited potential automobile customers.  These independent contractors were paid a fee or a commission if a referred individual purchased a vehicle from Toyota West.  Petitioner did not earn commissions from this program.  He was paid a salary by Toyota West.[4]  Sometime in early 1997, an undescribed financial irregularity developed or was discovered in the program petitioner administered, and he was terminated by Toyota West.  All of his records, including some personal records, were confiscated and never returned to him.  Petitioner thereafter became a newspaper distributor.

During 1995, petitioner began breeding paint horses.  These horses are used for show purposes.  Petitioner was a member of the American Paint Horse Association.  Petitioner had no expertise in raising horses except that he was raised on a farm and had some experience in breaking horses.  Petitioner purchased his first horse in October 1995 and later acquired other horses.  In 1996, the year at issue, petitioner had five horses, one of which was a stud and four were brood mares.  The horses were located on a farm away from his home.  Petitioner paid $120 per month for boarding each horse.  The owner of the stable also trained horses, and the fee for that was $400 per month per

---

[4]  Petitioner and his wife reported wages and salary income of $126,399 on their 1996 Federal income tax return, of which $99,450 represented petitioner's wages from Toyota West.

horse.  Petitioner also utilized the training services of an individual at Dallas, Texas.

According to petitioner, the income to be expected from paint horses was from breeding.  There were no monetary awards to be had from participating in shows except that favorable ratings for a stud enhanced the breeding fees that could be charged. Petitioner presented no evidence to establish what success or achievements he attained from the participation of his horses in shows.

Petitioner realized no gross income from his horse activity in either 1995 or 1996.  The record does not show what expenses petitioner incurred during 1995.  On his 1996 joint return, petitioner, on Schedule C, Profit or Loss From Business, claimed expenses totaling $23,280 and a net loss for that amount, all from the horse activity.  For 1997, petitioner reported on Schedule C a net profit of $829.[5]  In early 1998, petitioner terminated the activity after his creditors foreclosed on the horses.  Petitioner, at that time, was unemployed and was unable to continue financing the activity.

---

[5]     Petitioner's 1997 Federal income tax return was not offered into evidence, nor were any books and records offered for that year.  Counsel for respondent stated he had obtained a computer printout of the return, and petitioner reported, for 1997, gross receipts of $17,500, expenses of $16,671, and a net profit of $829.  Petitioner did not address the sources or the nature of the gross receipts.

Petitioner contends that he maintained books and records of his activity; however, those records were kept at Toyota West, his employer, and when his job there was terminated, the records were confiscated and never returned. Those records, however, would not have included any bank records because petitioner maintained no bank accounts. He dealt only in cash. He testified that he never had a bank account. All of his salary checks were cashed, and all of his bills were paid in cash, including those of the horse activity.

Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." This case is appealable to the Ninth Circuit Court of Appeals. Within the Ninth Circuit, the standard for determining whether an activity is engaged in for profit under section 183 is whether the primary purpose of the activity was for profit. See Warden v. Commissioner, T.C. Memo. 1995-176, affd. without published opinion 111 F.3d 139 (9th Cir. 1997). While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. See Hulter v. Commissioner, 91 T.C. 371 (1988). Whether a taxpayer's primary purpose in engaging in

an activity was primarily for profit is a question of fact to be resolved from all relevant facts and circumstances. See id. at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The burden of proving such objective is on the taxpayer. See Rule 142(a); see Welch v. Helvering, 290 U.S. 111 (1933). In resolving this factual question, greater weight is given to objective facts than to the taxpayer's after-the-fact statements of intent. See Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Siegel v. Commissioner, 78 T.C. 659, 699 (1982); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors with respect to the determination of whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profits earned, if any; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure

or recreation involved. These factors are not merely a counting device where the number of factors for or against the taxpayer is determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. Cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Not all factors are applicable in every case, and no one factor is controlling. See Abramson v. Commissioner, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs. Further, the determination of a taxpayer's profit motive is made on a yearly basis. See Commissioner v. Sunnen, 333 U.S. 591, 598 (1948).

On this record, the Court is satisfied that petitioner's activity was not carried on primarily for profit. It is fair to conclude, among other things, that the activity was not conducted in a businesslike manner. Although the Court is satisfied that petitioner was deeply interested in the activity, his motivation appears to have been primarily his love for horses. Petitioner had no formal or informal business plan and did not show that he sought the advice of experts on how to conduct the activity on a profitable basis. He failed to present evidence to show that he spent a significant amount of time on the activity as he was employed on a full time basis during 1996. There is no indication in the record that petitioner undertook this activity for any purposes other than his love for horses. Petitioner has

not satisfied the Court that he had a good faith primary objective of making a profit from his activity during 1996. See Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The Court concludes that petitioner's activity was not engaged in primarily for profit. Having so concluded, the Court finds it unnecessary to consider respondent's alternative determination that petitioner's expenses related to the activity were not substantiated. Respondent, therefore, is sustained on this issue.

Section 6662(a) provides that, if that section is applicable to any portion of an underpayment in taxes, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies. Under section 6664(c), no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause and that the taxpayer acted in good faith with respect to such portion of the underpayment.

Section 6662(b)(1) provides that section 6662 shall apply to any underpayment attributable to negligence or disregard of rules or regulations. Negligence is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under like circumstances. See Neely v. Commissioner, 85 T.C. 934 (1985). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the

internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.

Although the Court holds that petitioner's activity was not engaged in primarily for profit during 1996, petitioner, nevertheless, realized a profit during 1997.  The activity was discontinued during 1998 when petitioner's creditors foreclosed on the horses.  While the undercapitalization of the activity underscores the Court's holding on the section 183 issue, the Court cannot conclude that the totality of the facts warrants imposition of the penalty under section 6662(a).  The Court, therefore, sustains petitioner on this issue.

<u>Decision will be entered for respondent for the deficiency and for petitioner for the penalty.</u>